**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**LESLIE V. EARNEST**                                                                                    **PLAINTIFF**

**V.**                                                                                    **CAUSE NO. 4:14-CV-094-JMV**

**CLARKSDALE MUNICIPAL SCHOOL DISTRICT**                                          **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER ON**</u>
<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on Defendant's motion for summary judgment [55].

Having thoroughly considered the same, the response, and the reply, the Court finds, for the

reasons explained below, that the motion is well taken and should be granted.

## I. INTRODUCTION

The plaintiff, Leslie V. Earnest, a former employee of the Clarksdale Municipal School

District ("CMSD"), filed this action against CMSD, asserting claims for race (white) and sex

(female) discrimination in the termination of her employment.  According to the Defendant, the

Plaintiff was discharged from her position as a pre-kindergarten teacher at Booker T.

Washington Elementary School for striking a four-year-old female student in the forehead.  The

Plaintiff alleges CMSD is liable for discrimination because it allegedly failed to treat Plaintiff

equally with similarly situated male employees and black employees of the school district.

Compl. ¶¶ 18, 19.  Specifically, in her complaint, Plaintiff complains two black, male school

employees were not terminated from their employment with the school district based upon

allegedly "more egregious" conduct.   Compl. ¶¶ 11-13, ¶¶ 19-20.

By the instant motion, CMSD asserts the undisputed facts establish that the Plaintiff

cannot make a prima facie case of discrimination because she is unable to put forth proof that an

African American and/or a male employee of CMSD was, under nearly identical circumstances

(aka "a comparator"), not terminated from employment.  Further, Defendant asserts that the undisputed facts establish the Defendant had a legitimate, nondiscriminatory reason for terminating the Plaintiff's employment, i.e., the Plaintiff admittedly struck a four-year-old female student in the forehead at school.

As concerns the Defendant's arguments, the Plaintiff, by way of response to the instant motion, asserts that the comparator on which she relies is Ed Wiggins[1], a high school teacher, who, according to the Plaintiff, is captured on a You-Tube video striking a student in the head, but who was not terminated as a result.  In reply, the Defendant asserts the Plaintiff has offered no proof that the circumstances under which she was terminated (striking  a 4 year old child in the forehead for having a runny nose) are nearly identical to those alleged by the Plaintiff to have been captured on the You-Tube video.

## II.  FACTS AND PROCEDURAL BACKGROUND

Except where noted, the following facts, taken virtually verbatim from the Defendant's brief in support of its motion for summary judgment, are undisputed by Plaintiff.

Plaintiff  is a white female.  Def.'s Br. Summ. J. 2.  She was hired by Principal Courtney Van Cleve as a pre-kindergarten teacher at Booker T. Washington Elementary School, prior to the 2012-2013 school year.  Van Cleve Dep. 4; Earnest Dep. 50.  Prior to the subject incident, Plaintiff had been the subject of two letters of reprimand for unplanned absences and failure to maintain professionalism in the classroom.  Exh. 23 to Def.'s Mot. Summ. J.  The events which

---

[1]In her complaint, Plaintiff also identifies School Resource Officer Derrell Washington.  However, she does not dispute the proof put forward by Defendant that shows Washington is not a true comparator.  Instead, she assumes that he is not and, instead, contends Wiggins is.  Despite this apparent concession as relates to the comparator status of Washington, the undersigned has, out of an abundance of caution, analyzed Plaintiff's claims as if the concession had not been made.

resulted in Plaintiff's termination as a teacher occurred on or about November 1, 2012, in the vicinity of the Booker T. Washington Elementary School cafeteria. Curtis Dep. 13-18; Plaintiff Dep. 93; Hr'g Tr. 6-9, Exh. 6 to Def.'s Mot. Summ. J. Gerald Curtis, an assistant kindergarten teacher, witnessed the subject incident as it transpired. Curtis Dep. 13-15; Hr'g. Trs. 6-8, 12-13, Exh. 6 to Def.'s Mot. Summ. J.; Curtis 10[sic]/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.

Plaintiff was the pre-kindergarten teacher of the four-year-old student in question. The student had a runny nose that morning. Curtis Dep. 11-13; Earnest Dep. 98. Earlier that morning, the assistant pre-kindergarten teacher in Plaintiff's classroom had instructed the student to clean her nose with a Kleenex tissue. Earnest Dep. 99. Plaintiff took the class to the cafeteria at approximately 10:30 a.m. for lunch. Curtis Dep. 7; Earnest Dep. 95, 99. Gerald Curtis was present that day in the cafeteria and regularly accompanied the children in his class to lunch. Curtis Dep. 7. Also present that day in the cafeteria were two retired teachers, Jacqueline Houston and Ms. Patricia Bane, who regularly came by the school to volunteer. Houston Aff., Exh. 8 to Def.'s Mot. Summ. J.; Curtis Dep. 13-14, 28-29.

After the children ate lunch, the Plaintiff assisted with the emptying of lunch trays. Earnest Dep. 100. The students formed a line, and brought their trays to Plaintiff so that she could empty them in the trash. *Id.* Plaintiff was positioned at the tray return area, and upon clearing the trays would place the trays in the return slot. *Id.* Assistant kindergarten teacher Curtis was also assisting with the clearing of the children's lunch trays. Curtis Dep. 12-13. The four-year-old student at issue approached Plaintiff, bringing her tray to her teacher for emptying like the other students. Earnest Dep. 100. Plaintiff noticed that the student's nose was running,

and told her to go to the classroom and clean her nose.  *Id*.  Plaintiff continued to clean off students' trays.  *Id.*

As Gerald Curtis was taking up the trays, Ms. Houston and Ms. Bane, the retired teachers, approached and informed him that the subject student's nose was running.  Curtis Dep. 13-14; Hr'g. Tr. 7, Exh. 6 to Def.'s Mot. Summ. J.; Houston Aff., Exh. 8 to Def.'s Mot. Summ. J.  Curtis pointed out the Plaintiff, and told Houston and Bane that she was the little girl's teacher. Curtis Dep. 13-14; Hr'g. Tr. 7, Exh. 6 to Def.'s Mot. Summ. J.; Houston Aff, Exh. 8 to Def.'s Mot. Summ. J.  Plaintiff approached the student with the runny nose, and, while the student was in the hallway, struck the four-year-old student in the forehead and instructed her to go blow her nose. Earnest Dep. 101; Earnest 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.; Curtis Dep. 13-14, 31; Hr'g. Tr. 7-8, Exh. 6 to Def.'s Mot. Summ. J.  Gerald Curtis was approximately one foot away from Plaintiff and the student when the Plaintiff struck the student in the forehead. Hr'g. Tr. 12, Exh. 6 to Def.'s Mot. Summ. J.  Plaintiff admits she struck the student in the forehead.  Plaintiff Dep. 107; Hr'g. Tr. 48, 51, 58, Exh. 6 to Def.'s Mot. Summ. J.; Earnest 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.  Immediately after she was struck, the child's forehead became red and swollen.  Curtis Dep. 15; Hr'g. Tr. 7, 13, Exh. 6 to Def.'s Mot. Summ. J.  After Plaintiff struck the student, the student turned and proceeded in the direction of her classroom. Curtis Dep. 31.

Shortly, thereafter, Jacqueline Houston, one of the retired teachers present in the cafeteria that day, encountered the student coming down the hallway.  Houston Aff, Exh. 8 to Def.'s Mot. Summ. J.  The child was crying.  *Id.*  Houston asked the girl what was wrong, and she said that her teacher hit her.  *Id.*  The girl pointed to her forehead where the Plaintiff had struck her, and

Houston saw a red mark on the student's forehead. *Id.* The red mark was present before any ice was applied to the student's forehead. *Id.*; Hr'g. Tr. 31, Exh. 6 to Def.'s Mot. Summ. J. Houston immediately took the student to the office and told the school secretary, Brenda Williams, that the student told Houston that her teacher had hit her. Houston Aff., Exh. 8 to Def.'s Mot. Summ. J. Williams noticed redness on the child's forehead before an ice pack was applied to the child's forehead. Hr'g. Tr. 30-31, Exh. 6 to Def.'s Mot. Summ. J.

Principal Van Cleve was at a principal's meeting at the district's central office and was not on the school's grounds at the time Ms. Houston took the student to the office. Houston Aff., Exh. 8 to Def.'s Mot. Summ. J.; Van Cleve Dep. 27. Houston took a photograph of the child's head because of the bruising to the child's forehead and because she felt it was necessary to document the incident. Houston Aff., Exh. 8 to Def.'s Mot. Summ. J. Houston took the photograph before any ice was placed on the student's forehead. *Id.*; Hr'g. Tr. 31, Exh. 6 to Def.'s Mot. Summ. J. After Houston took the photograph, Williams applied an ice pack to the child's forehead, comforted her, and tried to get her to stop crying. Hr'g. Tr. 30, Exh. 6 to Def.'s Mot. Summ. J. Williams contacted Principal Van Cleve to inform her of what was occurring. Houston Aff., Exh. 8 to Def. Mot. Summ. J.; Van Cleve Dep. 28; Van Cleve 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.

Upon receiving the message from school secretary Brenda Williams about what had occurred at the school, Principal Van Cleve left the principals' meeting and returned directly to the school. Van Cleve Dep. 30. Upon her arrival at the school, Van Cleve spoke directly to the student about the incident. Van Cleve Dep. 28; Williams 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J. Van Cleve asked Ms. Williams to witness Van Cleve's questioning of the

child.  Van Cleve 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.  The student told

Van Cleve that Plaintiff had hit her in the forehead because her nose was running.  Van Cleve

Dep. 31; Van Cleve 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.  Principal Van

Cleve spoke to Gerald Curtis.  Van Cleve Dep. 36-37; Van Cleve 11/1/2012 Written Statement,

Exh. 7 to Def.'s Mot. Summ. J.  After speaking with Curtis, Principal Van Cleve spoke to

Plaintiff, who told her she had "popped" the student on the forehead and told her to wipe her

nose.  Van Cleve Dep. 38; Van Cleve 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ.

J.; Plaintiff 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.  Van Cleve asked

Plaintiff to provide a written account of the incident. Van Cleve Dep. 44; Plaintiff Dep. 114.

Based on a prior discussion with Superintendent Dupree, Van Cleve asked Plaintiff to go home

for the rest of the school day, pending the results of CMSD's investigation of the incident. Van

Cleve Dep. 39-40; Van Cleve 11/1/2012 Written Statement, Exh. 7 to Def.'s Mot. Summ. J.

    After returning to the school, Principal Van Cleve also spoke to the four-year-old

student's grandmother about the incident. Van Cleve Dep. 46.  The student's grandmother

expressed concern about the incident to Principal Van Cleve and said she wanted the incident

handled appropriately.  Van Cleve Dep. 46.  The student's grandmother further stated that if the

incident were not handled appropriately, she would take her concerns elsewhere.  Van Cleve Dep.

46.

    After speaking with Brenda Williams, the child, Gerald Curtis, Plaintiff, and the

grandmother, Principal Van Cleve forwarded all of her findings and written statements regarding

the incident to CMSD Superintendent, Dennis Dupree, Sr.  Van Cleve Dep. 42.  Superintendent

Dupree received the written statements (including Plaintiff's) and written investigatory report of

Principal Van Cleve's investigation. Dupree Dep. 32, 34, Exh. 9.

With respect to teacher ethics and teacher conduct, CMSD adheres to the "Mississippi Educator Code of Ethics and Standards of Conduct" ("Code of Ethics"), Exh. 10 to Def.'s Mot. Summ. J., which is  posted on the CMSD website, and which Superintendent Dupree reviews each school year with the principals and teachers of the school district.  Dupree Dep. 40. Standard 1.2 of the Code of Ethics states it is unethical for a teacher to have physical altercations with students.  Exh. 10 to Def.'s Mot. Summ. J.  Additionally, the CMSD Employee Handbook sets forth the school district's policy on corporal punishment, which does not authorize teachers to strike students in the head.  CMSD Employee Handbook, Exh. 11 to Def.'s Mot. Summ. J.; Van Cleve Dep. 11-12; Hr'g Tr. 24, Exh. 6 to Def.'s Mot. Summ. J.

Based upon his review of the investigatory materials submitted to Superintendent Dupree by Principal Van Cleve, and the policies in place, Dupree made the decision to recommend the termination of Plaintiff's employment to the CMSD Board of Trustees.  Dupree Dep. 30, 36-37. Dupree sent Plaintiff a letter dated November 5, 2012, informing her of her termination and her rights with regard to a hearing on the decision.  Letter from Dupree to Plaintiff dated 11/5/2012, Exh. 12 to Def.'s Mot. Summ. J.  Plaintiff retained counsel and asked for a continuance of the hearing originally set for November 15, 2012, waiving her right to a hearing within thirty days. Letter from Willie Griffin, Esq., Exh. 13 to Def.'s Mot. Summ. J.; Notice of Hearing, Exh. 14 to Def.'s Mot. Summ. J.  The November 15 hearing was continued and rescheduled for December 13, 2012, but postponed again due to the failure of the court reporter to appear at the hearing. Letter from John Cocke, Esq. dated 11/27/2012, Exh. 15 to Def.'s Mot. Summ. J.

On March 1, 2013, a hearing before an impartial Hearing Officer, James Strait, was

conducted concerning Plaintiff's termination. Hr'g Tr. 1-3, Exh. 6 to Def. Mot. Summ. J.

Plaintiff was represented at the hearing by her attorney, Willie L. Griffin, Esq., and she was

afforded an opportunity to call and question witnesses and to testify, herself. *Id.* On March 21,

2013, the CMSD Board of Trustees convened in executive session and voted to uphold the

termination of Plaintiff's employment. Board of Trustees Minutes, Exh. 16 to Def.'s Mot. Summ.

J.

Superintendent Dupree delivered a letter to Plaintiff, dated March 22, 2013, informing her

of the Board of Trustees' decision to uphold her termination and also informing her that the last

day she would be paid would be March 29, 2013.[2] Letter, Exh. 17 to Def.'s Mot. Summ. J.

Thereafter, Plaintiff filed a charge with the EEOC and subsequently filed the instant lawsuit.

EEOC Charge, Exh. 1 to Def.'s Mot. Summ. J.; Complaint, Doc #1.

It is Superintendent Dupree's approach to recommend termination of employment of any

teacher who hits a student, in cases where an investigation by the school principal is forwarded to

Dupree for his review and the investigation supports a finding that the teacher struck a student.

Dupree Dep. 30, 36-37. Though Plaintiff contends the same is irrelevant, during his tenure as

CMSD superintendent, Dupree asserts he has recommended the termination of five other CMSD

teachers when an investigation revealed each had hit a student. Dupree Dep. 11. A summary of

the five incidents in which Dupree recommended termination of teacher employment for hitting a

student is as follows:

---

[2]Upon seeking a hearing and review of her dismissal in November of 2012, Plaintiff was placed in a"suspended with pay" category, in which she was paid until a final, post-hearing decision on her employment status was rendered. Letter Dated March 22, 3013, Exh. 17 to Def.'s Mot. Summ. J.; Plaintiff Dep. 120. In other words, Plaintiff was paid from November 2012 through March 29, 2013, even though she did not perform any work at any point during that time period. *Id.*

1. In November 2013, Superintendent Dupree recommended the termination of a female, African-American teacher at J.W. Stampley 9th Grade Academy for striking a female student in the head;

2. In September 2014, Superintendent Dupree recommended the termination of a female, Hispanic teacher at Booker T. Washington Elementary School, who admitted she slapped a female kindergarten student in the face;

3. In January 2015, Superintendent Dupree recommended the termination of a female, African-American teacher at Clarksdale High School for shoving a male student;

4. In February/March 2015, Superintendent Dupree recommended the termination of a male, African-American teacher at Oakhurst Intermediate School for striking a female student; and

5. In February/March 2015, Superintendent Dupree recommended the termination of employment of another male, African-American teacher at Oakhurst Intermediate School for striking a student.

Dupree Aff. and attachments, Exh. 18 to Def.'s Mot. Summ. J.

Plaintiff's Complaint alleges two black, male school employees, Derrell Washington and now-retired, Clarksdale High School French teacher, Ed Wiggins, were not recommended for termination for allegedly "more egregious actions." Complaint, Doc. #1 ¶ 20. Derrell Washington is a School Resource Officer (SRO) employed by CMSD. Dupree Dep. 13. By law and by duty, SRO Washington has the right to apprehend students who are breaking the law and to maintain order in the school. Dupree Dep. 13. The incident involving SRO Washington occurred on or about April 7, 2011, in the hallway of Clarksdale High School. Benjamin Earnest Dep. 30; B. Earnest 4/7/2011 Written Statement, Exh. 20 to Def.'s Mot. Summ. J. Benjamin Earnest, a Clarksdale High School teacher and coach (and husband of Plaintiff), was present during at least a portion of the incident. Benjamin Earnest Dep. 30; B. Earnest 4/7/2011 Written Statement, Exh. 20 to Def.'s Mot. Summ. J. According to Benjamin Earnest's written statement,

a group of students were congregating in the hallway at approximately 10:00 a.m.  B. Earnest 4/7/2011 Written Statement, Exh. 20 to Def.'s Mot. Summ. J.  SRO Washington told one of the students, along with the others, to go class.  *Id*.  After SRO Washington calmly directed the students to move toward the class, the student whom Washington addressed made a derogatory comment to Washington.  *Id.*  SRO Washington replied, "Just go on and go to class." *Id.*  A verbal altercation quickly escalated between the student and SRO Washington.  *Id*.  The student made verbal threats toward SRO Washington, and his mannerisms indicated he was physically threatening Washington as well.  Other students attempted to convince the student to go to class, and students attempted to physically restrain the student from moving towards SRO Washington. *Id.*  The student did not heed his fellow students, and continued to move toward SRO Washington.  *Id.*  SRO Washington moved in to take into custody the student who refused to go to class and was threatening him.  *Id.*  The student physically resisted SRO Washington, which required SRO Washington to use physical force to restrain him.  *Id.*  As SRO Washington was apprehending the student, the student's brother, who was by now present at the scene, became aggravated, and Mr. Earnest and another teacher had to physically restrain the brother from going after SRO Washington.  *Id.*  SRO Washington, along with another of the high school's resource officers, diffused the situation involving the threatening student.  *Id.*

The school conducted an investigation of the incident involving SRO Washington and the student.  Dupree Dep. 13.  SRO Washington was suspended with pay for two days by Superintendent Dupree, pending the results of a thorough investigation of the incident.  *Id*. at 13, 14.  During the two-day investigation, Dupree spoke to the student involved and to the student's mother, reviewed the written statement of Benjamin Earnest, and viewed video footage of a

portion of the incident. Dupree Dep. 14-16. After Dupree's initial discussions with the student

and mother, neither pursued the matter any further. Dupree Dep. 14-16. The video footage did

not depict the beginning of the incident. Dupree Dep. 16. The video footage reviewed by Dupree

depicted SRO Washington attempting to apprehend the student as they moved into range of the

camera. *Id.* The student was physically resisting SRO Washington. *Id.* The video footage also

depicted Benjamin Earnest grabbing the student's brother by the neck and dragging him

backward so he could not go after SRO Washington. *Id.* The video footage showed SRO

Washington was able to get the student who was resisting arrest onto the floor in an attempt to

handcuff him. *Id.* at 16-19. Copies of SRO Washington's medical records related to treatment of

the injuries he sustained while arresting the student have been produced pursuant to a protective

order as part of Defendant's Supplemental Initial Disclosures.

Upon concluding his investigation into the incident, Superintendent Dupree suspended

SRO Washington for four days without pay. Dupree Affidavit, Exh. 18 to Def.'s Mot. Summ. J.;

Kemp Aff., Exh. 21 to Def.'s Mot. Summ. J. Benjamin Earnest, who is Plaintiff's husband and is

Caucasion, was not disciplined in any manner by CMSD for physically restraining the student's

brother by the neck. Dupree Dep. 17; Dupree Aff., Exh. 18 to Def.'s Mot. Summ. J.

The other incident raised by Plaintiff's Complaint involved Ed Wiggins, a now-retired

French teacher at Clarksdale High School ("CHS"). Dupree Aff., Exh. 18; Kemp Aff., Exh. 21.

Students at CHS apparently filmed and posted a video on YouTube. Dupree Aff., Exh. 18 to

Def.'s Mot. Summ. J.; Kemp Aff., Exh. 21to Def.'s Mot. Summ. J. The video was brought to the

attention of CHS Principal, Manika Kemp, and Superintendent Dupree because it depicted a CHS

student urinating in a school hallway. Kemp Aff., Exh. 21; Dupree Aff., Exh. 18. Dr. Kemp and

Superintendent Dupree reviewed a portion of the video in an effort to identify the student who was urinating in the hallway. Kemp Aff, Exh. 21; Dupree Aff., Exh. 18. The Defendant contends the YouTube video in question was apparently added to over time to include additional events. Kemp Aff., Exh. 21; Dupree Aff., Exh. 18. Plaintiff denies it was added to. In any event, one of the events on the video depicted a student in the classroom of CHS French teacher, Ed Wiggins, dancing and playing around at the front of the classroom. Dupree Aff., Exh. 18; Kemp Aff., Exh. 21. According to the Defendant, this portion of the "student-made" video depicts Wiggins, as he enters the classroom, apparently make a motion to direct the student back to his seat, but does not show Wiggins make contact with the student. Dupree Aff., Exh. 18. Plaintiff, on the other hand, asserts the video shows the teacher strike the highschool student in the head with a clip board. Compl. ¶ 11. According to the Defendant, neither Dr. Kemp nor Superintendent Dupree recall witnessing this incident upon their first viewing of the video because their purpose in watching the video was to identify the student who had urinated in the high school hallway. Dupree Aff., Exh. 18; Kemp Aff., Exh.21. The student in Wiggins' class did not make a complaint to the school or to Superintendent Dupree with regard to the incident, nor did the student's parent(s). Dupree Aff., Exh. 18; KempAff., Exh. 21. Based on the sequence of events depicted on the YouTube video, it appears the incident in Wiggins' classroom occurred shortly before the end of the 2012 school year. Dupree Aff., Exh. 18. Wiggins retired at the end of the 2012 school year. Dupree Aff., Exh. 18. The portion of the video taken in Wiggins' classroom was brought to the attention of Superintendent Dupree by Plaintiff, who by that time had employed counsel to represent her in connection with her termination of employment. Dupree Aff., Exh. 18. Superintendent Dupree asserts, by way of sworn testimony, that he has no recollection of seeing

this incident on the video prior to Ed Wiggins' retirement. Dupree Dep. 45; Dupree Aff., Exh. 18.

Though Plaintiff relies on the video in support of her contention that Wiggins was terminated under nearly identical circumstances as those for which she was terminated, she did not provide the video or means of access to it to the Court. Instead, the Defendant provided the Court the necessary information to access the video on YouTube. Having reviewed it, there can be no genuine issue that the video does not depict the highschool teacher hitting the apparently teenaged student in the head with a clip board, as alleged by Plaintiff in her complaint. On the other hand, it is unclear whether it depicts any contact between the teacher's hand and the rear of the student's head. All that can be discerned is that the student was dancing in the classroom when the teacher, Wiggins, entered; and a swift and fleeting movement of some sort occurred in the direction of the student's head, followed by what appears to be a slight ducking type motion by the student. Frankly, the undersigned had some difficulty even locating the alleged incident on the video in as much as it is sandwiched between takes of students urinating on school property, appearing to drink alcoholic beverages, "modeling" lingerie, and engaging in other blatantly disruptive and offensive conduct, which make the take of the student dancing in the classroom pale by comparison.

### III. AUTHORITIES

Summary judgment is appropriate if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 313, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant meets its burden, the non-moving party must "come forward with specific facts showing a genuine factual

issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689, 123 L.Ed. 2d 317 (1993); *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

A.      Summary Judgment Analysis in Employment Discrimination Cases

Employment discrimination claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in the Fifth Circuit. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). Under *McDonnell Douglas*, a plaintiff has the initial burden of making a prima facie case. To make out a prima facie case for discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was qualified for the position in question; (3) she was denied or discharged from that position or suffered some adverse employment actions; and (4) a person outside the protected class and with similar qualifications was treated more favorably. *McDonnell Douglas, supra*, 411U.S. at 802. If the plaintiff establishes a prima facie case, the burden is then on the employer to "articulate some legitimate, non-discriminatory reason" for the employer's decision. This is a mere burden of production, not of proof. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003). If the employer satisfies that burden, "'the *McDonnell*

14

*Douglas* framework–with its presumptions and burdens'–disappear[s], . . . and the sole remaining issue [is] 'discrimination vel non.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citations omitted).

"Although intermediate evidentiary boundaries shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the Defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* at 143; *see also Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000). In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff then must show either "(1) the employer's reason is pretext, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *McDonnell Douglas*, *supra*. A reason is pretextual if it is false or if there is evidence of disparate treatment. To meet this standard, the plaintiff must prove that "no reasonable employer would have made the same decision." *Deines v. Texas Dept. of Protective and Regulatory Svcs.*, 164 F.3d 277, 282 (5th Cir.1999). However, the court "does not engage in a second-guessing of an employer's business decisions." *Deanes v. North Mississippi State Hospital*, 2013 WL 1293794, *5(N.D. Miss. 2012), citing *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

In the context of termination of employment, a plaintiff may establish a prima facie case by demonstrating that she is a member of a protected class, she was qualified for the position, and similarly situated persons outside the class were treated more favorably than she. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To establish a prima facie case in this manner, the plaintiff must show that employees not of her protected class received preferential

treatment under circumstances nearly identical to hers. *See Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006); *see also Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206,210 (5th Cir. 2004) (emphasizing that assessment of similarity of employees must be viewed from employer's perspective). That is, to prevail on her claims of racial or sexual discrimination, Plaintiff must show that a non-Caucasian employee and/or a male employee, who engaged in comparable conduct under similar circumstances, was not terminated. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005).

To demonstrate pretext, Plaintiff must do more than show that CMSD made an incorrect decision; she must show that it made a discriminatory one. The issue at the pretextual stage is whether the Defendant's reasons, even if incorrect, were the real reasons for the employer's actions with respect to Plaintiff. This general framework governs all Plaintiff's claims.

In reviewing a plaintiff's claim for disparate treatment on summary judgment, Judge Aycock, in *Suggs v. Lowndes County Sch. Dist.*, 804 F. Supp. 2d 510 (N. D. Miss. 2001), stated "[i]n order for Plaintiff to show disparate treatment, he 'must demonstrate that the misconduct for which []he was discharged was nearly identical to that engaged in by an employee not within h[is] protected class whom the company retained." *Suggs,* 804 F. Supp. 2d at 516 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (citations omitted). The Court stated that the standard to demonstrate disparate treatment is exacting:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under "nearly identical circumstances." The employment actions being

compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Id.* at 516-17 (quoting *Lee v. Kansas City South Railway Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (emphasis added).

In *Suggs* the Court found the plaintiff failed to establish that he was similarly situated to two alleged Caucasian comparators. *Id.* at 517. With respect to the first comparator, the Court found he was employed in a different division of the school district than the plaintiff and that plaintiff had failed to show that his actions were "nearly identical" to the proffered comparator. With respect to the second alleged comparator, he was not treated more favorably than the plaintiff. *Id.* The Court granted defendant's motion for summary judgment as to that plaintiff's Title VII claim. *Id.* at 520.

B.    Analysis

In this case, as in *Suggs*, the alleged comparators are not similarly situated to Plaintiff. Resource Officer Washington had a job that required him to maintain order in the schools, and he was threatened by a high school student. And, while Wiggins was a teacher, he reported to a different supervisor. Furthermore, Superintendent Dupree asserts he did not even learn about the incident, if any, involving Wiggins until after Wiggins had left the employment of the school district. Regardless, it is uncontested that no complaint was made regarding Wiggins's actions. There is no evidence, unlike in the case of the four-year-old child, that the high school student was injured or offended by Wiggins, and it is not even clear that physical contact occurred.

Neither Washington nor Wiggins is similarly situated to Plaintiff, and Plaintiff's circumstances, i.e., admittedly striking a *four-year-old* female student in front of another teacher in the forehead so hard as to cause swelling and bruising for having a runny nose, does not include circumstances remotely "nearly identical" to the circumstances involving Washington or Wiggins.

At the time of the incident involving Washington cited by Plaintiff, SRO Washington worked at CHS in a security capacity, not as a teacher. Washington's job duties, responsibilities, function, and authority were substantially different from Plaintiff's as a pre-kindergarten teacher. One of Washington's duties was to foster school order and discipline, and he had the authority to apprehend and take into custody students who were not obeying the law. The incident cited by Plaintiff involved SRO Washington attempting to apprehend a teenage, male student, who had threatened SRO Washington with violence. During the course of attempting to apprehend the student, the student physically resisted arrest, which necessitated a physical response by Washington to control the violent student. SRO Washington required medical care as a result of the incident. Upon investigation by the school principal and Superintendent Dupree, Dupree determined that Washington acted within his authority with regard to his physical contact with the student, given the circumstances. Superintendent Dupree also spoke to both the student and his mother once after the incident, and they did not pursue the issue any further, whereas the grandmother of the four-year-old girl Plaintiff struck made it clear to Principal Van Cleve and to Superintendent Dupree that she wanted the issue handled appropriately, and if it were not, that she would take her concerns elsewhere. Additionally, Plaintiff and Washington did not have "substantially comparable violation histories," as Plaintiff had been previously reprimanded for unplanned absences and failure to maintain professionalism in the classroom, while Washington

had no prior reprimands.  Accordingly, as apparently Plaintiff has conceded in response to the Defendant's motion for summary judgment, Plaintiff cannot establish disparate treatment between herself and SRO Washington as a matter of law.  *See Culwell*, 468 F.3d at 873.

The incident involving now-retired French teacher, Ed Wiggins, is also not comparable to Plaintiff's admittedly striking a four-year-old female student in the forehead because she had a runny nose.  The evidence in the record is undisputed that Plaintiff struck her four-year-old student in the forehead and that she admitted the same in her statement written on the date of the incident.  On the other hand, the "evidence" against Wiggins consists of YouTube video which, when it was reviewed by Superintendent Dupree, purportedly showed Wiggins apparently making a motion with his hand toward a teenaged student who was dancing in the front of the classroom, but is inconclusive as to whether or not any contact occurred.  The two circumstances are also clearly dissimilar because, unlike the circumstances surrounding the Plaintiff's incident in which the four-year-old girl went to the office almost immediately after being struck by Plaintiff; told Principal Van Cleve what had occurred; and her obvious injuries were documented, the purported incident involving Wiggins and a high school student was never brought to the attention of Principal Kemp or Superintendent Dupree by the student or the student's family, and there is absolutely no evidence that the high school student, unlike the four-year-old, was injured.

Although it is not clear when the portion of the video involving Wiggins and the student was added or if it was added, neither Dr. Kemp nor Superintendent Dupree recall witnessing it upon their first viewing of the video because their purpose in watching the video was to identify a student who had urinated in the high school hallway.  Based on the sequence of events depicted on the YouTube video, it appears the incident in Wiggins's classroom occurred shortly before the

end of the 2012 school year.  Mr. Wiggins retired at the end of the 2012 school year.  According to Superintendent Dupree, the portion of the video taken in Wiggins's classroom was brought to his attention by Plaintiff, who by that time had employed counsel to represent her in connection with her termination of employment.  Superintendent Dupree testified he has no recollection of watching the subject portion of the video prior to Wiggins' retirement.  Accordingly, Dupree asserts he had nothing to evaluate or investigate with regard to Wiggins, and Dupree could not terminate Wiggins with respect to an incident that was not brought to his attention prior to Wiggins' retirement.  Likewise, as between Plaintiff and Washington, Plaintiff and Wiggins did not have "substantially comparable violation histories."  The circumstances of the Plaintiff's and Wiggins's situations are simply not similar, i.e., nearly identical, where Plaintiff striking her student (a four-year-old child) in the forehead, causing injury, was reported to CMSD immediately, and the alleged incident involving Wiggins, if any contact occurred, was not reported at all, and there is no evidence that any injury occurred, even assuming actual contact was made.  Based on this evidence, the Wiggins incident cannot form the basis of a claim of discrimination, and failure to terminate a teacher for an incident the school board was not aware of does not demonstrate discrimination.  Plaintiff, thus, cannot establish pretext through disparate treatment as a matter of law.

Furthermore, even assuming, *arguendo*, that Plaintiff establishes a prima facie case, there is a legitimate, nondiscriminatory reason for the school district's decision.  Specifically, CMSD had a legitimate, nondiscriminatory reason to terminate Plaintiff's employment–the fact that Plaintiff struck one of her four-year-old students in the head.  Plaintiff admits she struck the four-year-old student; a fellow teacher witnessed Plaintiff strike the student; the student informed

her principal that Plaintiff struck her in the forehead; the grandparents appeared ready to take other legal action; there was visible redness and swelling where Plaintiff struck the student; and there is photographic evidence of the redness and swelling on the child's forehead where she was struck by Plaintiff.

## IV. CONCLUSION

As explained above, the Court finds there are no genuine issues of material fact and that the Defendant is entitled to a judgment on all of Plaintiff's claims as a matter of law.

This 29th day of September, 2015.

/s/ Jane M. Virden
U. S. Magistrate Judge